1  MORGAN, LEWIS & BOCKIUS LLP
2  Megan A. Suehiro, Bar No. 316104
   megan.suehiro@morganlewis.com
3  300 South Grand Avenue, Twenty-Second Floor
   Los Angeles, CA 90071-3132
4  Tel:    +1.213.612.2500
   Fax:    +1.213.612.2501
5
6  J. Gordon Cooney Jr. (*pro hac vice forthcoming*)
   gordon.cooney@morganlewis.com
7  Franco A. Corrado (*pro hac vice forthcoming*)
   franco.corrado@morganlewis.com
8  2222 Market Street
   Philadelphia, PA 19103
9  Tel:    +1.215.963.5000
   Fax:    +1.215.963.5001
10
11 Attorneys for Defendants
   HALEON US HOLDINGS LLC; and HALEON
12 US INC.

13                    UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15

16 | ANDERSON SILVA and GRACE JONES, as | Case No. 3:24-cv-04059-TLT
   individuals, on behalf of themselves, the
   general public and those similarly situated, |

17 | | **DEFENDANTS' NOTICE OF MOTION
        Plaintiffs, | AND MOTION TO DISMISS
                    | PLAINTIFFS' CLASS ACTION**
18 | v. | **COMPLAINT; MEMORANDUM OF
             | POINTS AND AUTHORITIES IN
19 | HALEON US HOLDINGS LLC; and | SUPPORT THEREOF**
   HALEON US INC.,

20 |        Defendants. | Date:     November 12, 2024
                        | Time:     2:00 p.m.
21 |                    | Ctrm:     9 – 19th Floor
                        | Judge:    Hon. Trina L. Thompson
22

23                       Compl. Filed:  July 3, 2024

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

**NOTICE IS HEREBY GIVEN** that on November 12, 2024, at 2:00 p.m., or as soon

4

thereafter as the matter may be heard by the above-referenced Court, located at 450 Golden Gate

5

Avenue, San Francisco, CA 94102, Courtroom 9 – 19th Floor, Defendants Haleon US Holdings

6

LLC and Haleon US Inc. (collectively, "Haleon") will and hereby do move this Court pursuant to

7

Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for an order dismissing with prejudice the

8

Class Action Complaint of Plaintiffs Anderson Silva and Grace Jones.

9

This Motion is based upon this Notice of Motion and Motion, the following Memorandum

10

of Points and Authorities, the Reply to be filed in support of this Motion, oral argument of counsel

11

at the hearing, all pleadings and papers on file in this action, and any other matters the Court may

12

properly consider by judicial notice or otherwise.

13

14

Dated: September 4, 2024                         MORGAN, LEWIS & BOCKIUS LLP

15

16

By  */s/ Megan A. Suehiro*

Megan A. Suehiro

17

J. Gordon Cooney Jr. (*pro hac vice forthcoming*)

Franco A. Corrado (*pro hac vice forthcoming*)

18

Attorneys for Defendants

19

Haleon US Holdings LLC and Haleon US Inc.

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DEFENDANTS' MOTION TO DISMISS;
3:24-CV-04059-TLT

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | ...................................................................................................... | 1 |
| II. | BACKGROUND | .................................................................................................... | 3 |
| | A. | FDA's Rulemaking and the Anticaries Monograph.......................................... | 3 |
| | B. | Plaintiffs' Allegations ..................................................................................... | 5 |
| III. | LEGAL STANDARD | ............................................................................................ | 8 |
| IV. | ARGUMENT | ........................................................................................................ | 9 |
| | A. | The Plain Language of the Labels Belies Plaintiffs' Interpretation. ....................... | 9 |
| | B. | Plaintiffs' Claims Are Preempted By Federal Law................................................ | 13 |
| | | 1. | The FDCA preempts state law claims imposing requirements different from or in addition to the final Anticaries Monograph. ............ 13 |
| | | 2. | Plaintiffs' claims would impose requirements that are different from or in addition to, and not otherwise identical with, the Anticaries Monograph................................................................................. 15 |
| | C. | Plaintiffs Are Not Entitled to Equitable Relief. .................................................... 19 |
| | D. | Plaintiffs Lack Standing to Seek Injunctive Relief. .............................................. 20 |
| V. | CONCLUSION | .................................................................................................... 21 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Andrade-Heymsfield v. NextFoods, Inc.*,
5       No. 3:21-CV-01446-BTM-MSB, 2022 WL 1772262 (S.D. Cal. Apr. 27, 2022) .................... 9

6   *Ashcroft v. Iqbal*,
7       556 U.S. 662 (2009) ........................................................................................................ 8

8   *Becker v. Skype Inc.*,
        No. 5:12-CV-06477-EJD, 2014 WL 556697 (N.D. Cal. Feb. 10, 2014) ............................... 21

9   *Bell Atl. Corp v. Twombly*,
10      550 U.S. 544 (2007) ........................................................................................................ 8

11  *Bobo v. Optimum Nutrition, Inc.*,
        No. 14CV2408 BEN (KSC), 2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ....................... 11

12
    *Bowling v. Johnson & Johnson*,
13      65 F. Supp. 3d 371 (S.D.N.Y. 2014) ............................................................ 4, 17, 18, 19

14  *Brown v. Starbucks Corp.*,
15      No. 18CV2286 JM (WVG), 2019 WL 996399 (S.D. Cal. Mar. 1, 2019) ................................ 9

16  *Carter v. Novartis Consumer Health, Inc.*,
        582 F. Supp. 2d 1271 (C.D. Cal. 2008) ........................................................ 14, 17, 19
17
    *Chamber of Commerce of the U.S. v. Whiting*,
18      563 U.S. 582 (2011) ...................................................................................................... 13

19  *Cordes v. Boulder Brands USA, Inc.*,
20      No. CV 18-6534 PSG (JCX), 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ........................ 21

21  *Davidson v. Kimberly-Clark Corp.*,
        889 F.3d 956 (9th Cir. 2018) .......................................................................................... 20
22
    *Ebner v. Fresh, Inc.*,
23      838 F.3d 958 (9th Cir. 2016) ............................................................................................ 9

24  *Eckler v. Neutrogena Corp.*,
25      238 Cal. App. 4th 433 (2015) .................................................................................... 14, 15

26  *Faustino v. Alcon Labs., Inc.*,
        No. CV1504145RGKAJWX, 2015 WL 12839161 (C.D. Cal. Sept. 22, 2015) ............... 15, 18
27
    *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
28      528 U.S. 167 (2000) ...................................................................................................... 20

*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006)................................................................................ 20

*Gordon v. City of Oakland*,
    627 F.3d 1092 (9th Cir. 2010)................................................................................ 21

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022)......................................................................... 19, 20

*Hillman v. Maretta*,
    569 U.S. 483 (2013) ............................................................................................... 13

*Houser v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
    No. 21-CV-09390 JST, 2023 WL 7284160 (N.D. Cal. Nov. 3, 2023) ............ 11, 13

*Joslin v. Clif Bar & Co.*,
    No. 4:18-CV-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019)............ 21

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................. 8

*Matic v. U.S. Nutrition, Inc.*,
    No. CV 18-9592 PSG, 2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) ................... 20

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010).................................................................................. 20

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021)..................................................................................... 12

*Morgan v. Albertsons Co.*,
    No. 22-CV-02948-JST, 2023 WL 3607275 (N.D. Cal. Mar. 13, 2023) ......... *passim*

*Nacarino v. KSF Acquisition Corp.*,
    642 F. Supp. 3d 1074 (N.D. Cal. 2022) .................................................................... 9

*Phillips v. Brooklyn Bedding LLC*,
    No. 23-CV-03781-RFL, 2024 WL 2830663 (N.D. Cal. Mar. 28, 2024) ................ 20

*Puerto Rico v. Franklin Cal. Tax-Free Trust*,
    579 U.S. 115 (2016) ............................................................................................... 13

*Punian v. Gillette Co.*,
    No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) .............. 13

*In re Qualcomm Antitrust Litig.*,
    No. 17-MD-02773-JSC, 2023 WL 7393012 (N.D. Cal. Nov. 7, 2023)................... 20

*Rahman v. Mott's LLP*,
    No. 13-CV-03482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ................... 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

*Richards v. Centripetal Networks, Inc.*,
  No. 4:23-CV-00145-HSG, 2024 WL 24327 (N.D. Cal. Jan. 2, 2024)......................................9

*Rugg v. Johnson & Johnson*,
  No. 17-cv-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) .................................13

*Seale v. GSK Consumer Health, Inc.*,
  -- F. Supp. 3d --, 2024 WL 1040854 (C.D. Cal. Feb. 27, 2024)................................15, 17, 19

*Smith v. Apple, Inc.*,
  No. 21-CV-09527-HSG, 2023 WL 2095914 (N.D. Cal. Feb. 17, 2023) ........................19, 20

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)...................................................................................3, 19, 20

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001).........................................................................................8

*Steiner v. Vi-Jon Inc.*,
  No. 23-CV-00473-AMO, 2024 WL 1181002 (N.D. Cal. Mar. 18, 2024) ...........................13

*Stewart v. Kodiak Cakes, LLC*,
  537 F. Supp. 3d 1103 (S.D. Cal. 2021) ...............................................................................21

*Werbel v. Pepsico, Inc.*,
  No. C 09-04456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ..........................................9

*Whiteside v. Kimberly Clark Corp.*,
  108 F.4th 771 (9th Cir. 2024)..........................................................................................10

*Wiltz v. Chattem, Inc.*,
  No. CV 15-1352-R, 2015 WL 3862368 (C.D. Cal. May 8, 2015)...................................14, 18

*Youngblood v. CVS Pharmacy*,
  No. 2:20-CV-06251-MCS-MRW, 2021 WL 3700256 (C.D. Cal. Aug. 17,
  2021) ......................................................................................................................17

**Constitutions**

U.S. Constitution Supremacy Clause ........................................................................13

**Statutes**

21 U.S.C. § 321 ....................................................................................................2

21 U.S.C. § 379r ..................................................................................................14

21 U.S.C. § 379r(a) ..............................................................................................2

California Consumers Legal Remedies Act ..........................................................3, 8, 19

California False Advertising Law .................................................................... 3, 8

California Unfair Competition Law ........................................................... 3, 8, 19

FDCA ....................................................................................... 2, 4, 13, 18

Food and Drug Administration Modernization Act of 1997, Pub. L. No. 105-115,
    111 Stat. 2296 ....................................................................................... 13

**Court Rules**

FRCP 12(b)(1) ................................................................................................ 8

FRCP 12(b)(6) ................................................................................................ 8

**Other Authorities**

21 C.F.R. 100.1(c)(4) ................................................................................... 14

21 C.F.R. § 330.1 ...................................................................................... 3, 4

21 C.F.R. § 330.10(a) ..................................................................................... 3

21 C.F.R. § 330.14(a) ..................................................................................... 3

21 C.F.R. § 355.50 ....................................................................... 2, 15, 16, 17

45 Fed. Reg. 20666 ............................................................................ 2, 4, 16

45 Fed. Reg. 20672 ......................................................................................... 2

60 FR 52474-01 ................................................................................... *passim*

Dr. Akshima Sahi, BDS, *What is Tooth Remineralization*, News Medical Life
    Sciences, (Nov. 11, 2018) ........................................................................ 12

Dr. JDB Featherstone, *Dental Caries: a dynamic disease process*, Australian
    Dental Journal, Aug. 18 ............................................................................ 12

Final Monograph § M021.3(c) ......................................................................... 2

Final Monograph § M021.3(d) ......................................................................... 2

P. Sachdev, *What to Know about Remineralizing Teeth*, WebMD (Nov. 1, 2021) ...................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    <u>INTRODUCTION</u>**

3

Haleon manufactures and sells various toothpaste and oral care products under the

4

Sensodyne brand name, including the "Pronamel" line of toothpaste formulated for those with

5

sensitive teeth or weakened tooth enamel (the "Products"). Plaintiffs Anderson Silva and Grace

6

Jones do not disagree that the Products relieve tooth sensitivity, protect enamel from loss, and help

7

"harden and strengthen" weakened tooth enamel through a process called remineralization. Compl.

8

¶ 39; *id.* ¶ 46 ("minerals . . . naturally fill the voids of the crystalline enamel structure [to] harden

9

and strengthen enamel"); *id.* ¶ 47 ("[f]louride helps naturally occurring minerals . . . bind to the

10

enamel structure, which hardens existing enamel and makes it less prone to erosion").

11

By stripping away all necessary context from three terms—"Rebuilds," "Restores," and

12

"Repairs"—that appear on certain of the labels, Plaintiffs contend the Products misleadingly

13

promise to ***regrow*** enamel after it has been ***lost***. *Id.* ¶¶ 4, 41-48. But, nowhere do the labels say

14

anything about ***regrowing lost*** tooth enamel. Instead, the labels accurately state that the Products

15

provide "Enamel ***Protection***" (which they undisputedly do) and "Repairs ***Weakened***" tooth enamel

16

(which they undisputedly do), both of which necessarily mean that the tooth enamel ***remains***

17

***present*** (*i.e.*, not lost).

18

As a result, there is nothing misleading about the Products' labels. The words "Rebuilds,"

19

"Restores," and "Repairs" do not exist on the labels in a vacuum, they immediately follow

20

descriptive claims that contextualize these terms in a manner that belies Plaintiffs' interpretation.

21

For Pronamel Intensive Enamel Repair allegedly purchased by one Plaintiff, the front label

22

prominently states that the product "Repairs ***Weakened*** Enamel" (without any mention of

23

"Rebuilds" or "Restores"). *Id.* ¶ 29. For the Pronamel Gentle Whitening product discussed in the

24

Complaint, the terms "Rebuilds" and "Restores" appear directly below the claim "Specialist

25

Enamel ***Protection***." *Id.* ¶ 22. Something that is "weakened" remains present, and to "protect"

26

something means to keep it safe—neither label remotely suggests that the Products regrow enamel

27

that has been lost. Rather, Plaintiffs' admissions that fluoride aids remineralization, which

28

"harden(s) and strengthen(s) enamel" (*e.g.*, rebuilds, restores, and repairs something that was made soft or weakened) and makes enamel "less prone to erosion," validate these label claims.

In any event, Plaintiffs' claims are preempted. The U.S. Food & Drug Administration ("FDA") regulates statements that manufacturers can make on labels for anticaries[1] drugs like the Products through a comprehensive monograph (the "Anticaries Monograph").[2]  *See id.* ¶ 4 (admitting the Products are anticaries OTC drugs regulated by the FDA and governed by monograph). Relevant here, the Anticaries Monograph permits labeling for sodium fluoride (the relevant ingredient in the Products) for the following Indication: "Aids in the prevention of dental (select one of the following: 'cavities,' 'decay,' 'caries (decay),' or 'caries (cavities)'. Other truthful and nonmisleading statements, describing" the indication for use may also be used. M021.3(c) (Anticaries drug); 21 C.F.R. § 355.50. The Anticaries Monograph is predicated on the FDA's findings that, *inter alia*, sodium fluoride prevents tooth decay and cavities by protecting enamel from erosion and ***enhancing*** the "remineralization" process. *See* 45 Fed. Reg. 20672 ("When fluoride is present in saliva or in plaque, the remineralization process is enhanced.").

The FDCA contains a broad express preemption provision placing with the FDA the responsibility for understanding the characteristics of OTC products and determining the requirements for their labels. Under that preemption provision, state law may not impose labeling requirements that are "different from," "in addition to," or "otherwise not identical with" FDA requirements. 21 U.S.C. § 379r(a). Plaintiffs' claims fall within the scope of FDCA preemption. Even though the FDA has determined that the fluoride found in these Products enhances remineralization, Plaintiffs seek to impose a requirement under state law that the Products' labels must not contain the claims "Repair," Rebuild," or "Restore." But no FDA requirement prohibits these claims and the FDA has determined that the fluoride in the Products enhances

---

[1] Cavities, or "dental caries," are "a disease of calcified tissues of teeth characterized by demineralization of the inorganic portion and destruction of the organ matrix." Final Monograph § M021.3(d). Cavities are caused by "cariogenic plaque," which "causes demineralization of a tooth structure." Advanced Notice of Proposed Rule Making ("NPR"), at 20670; *see also* Compl. ¶ 24 ("Acid attacks enamel" and "weaken[s] the enamel structure.").

[2] *See* Over-the-Counter (OTC) Monograph M021: Anticaries Drug Products for Over-the-Counter Human Use, 60 FR 52474-01 ("Anticaries Monograph"); 21 U.S.C. § 321, *et seq.*

remineralization.  Claims challenging the use of terminology where, as here, the substance of the claims is addressed by the FDA are preempted.  To evaluate Plaintiffs' contrary claims about sodium fluoride's effect and the propriety of "Rebuilds," "Restores," and "Repairs" on the Products' label, a trial court and jury would need to second-guess the FDA's scientific assessment of the evidence concerning sodium fluoride's effects on enamel and the requirements it established for OTC Anticaries Drugs.  This is exactly the result that Congress prohibited through the FDCA's preemption provision.  Plaintiffs' Complaint must be dismissed as preempted.

In addition, Plaintiffs' equitable claims for restitution must be dismissed because Plaintiffs have not alleged they lack an adequate remedy at law.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020).  To the contrary, Plaintiffs allege they are entitled to a number of legal remedies, including actual, punitive, and consequential damages, foreclosing their equitable restitution claims under the Consumer Legal Remedies Act ("CLRA"), the False Advertising Law ("FAL"), the Unfair Competition Law ("UCL"), and for unjust enrichment.

Finally, given Plaintiffs' knowledge of the Products and understanding that it is impossible to replace lost enamel in the way they contend the packaging suggests, they fail to allege they are susceptible to repeated harms absent an injunction.  Thus, Plaintiffs lack standing to request injunctive relief.

Plaintiffs' Complaint suffers from uncurable, fundamental deficiencies further detailed herein.  Accordingly, their claims should be dismissed with prejudice.

## II.   **BACKGROUND**

### A.   **FDA's Rulemaking and the Anticaries Monograph.**

The Anticaries Monograph is the product of years-long scientific research and analysis.  "[T]he FDA appoints advisory review panels of qualified experts to evaluate the safety and effectiveness of over-the-counter drugs, to review their labeling, and to advise on the promulgation of monographs establishing conditions under which particular categories of over-the-counter drugs can be marketed."  *Morgan v. Albertsons Co.*, No. 22-CV-02948-JST, 2023 WL 3607275, at *2 (N.D. Cal. Mar. 13, 2023) (internal quotations and citations omitted); *see* 21 C.F.R. §§ 330.1, 330.10(a), 330.14(a).  The FDA then "publishes proposed and tentative final monographs for public

review and comment, and eventually promulgates a final monograph in the form of regulations in the Code of Federal Regulations," which "establish conditions under which a category of over-the-counter drugs is recognized as safe and effective and not misbranded." *Morgan*, 2023 WL 3607275, at *2; *see* 21 C.F.R. § 330.1.

The FDA set out its labeling requirements for Anticaries Drug Products through its rule making process, beginning in 1980 with an "Advance Notice of Proposed Rulemaking." *See* 45 Fed. Reg. 20666 ("NPR"). There, the FDA published its findings on how sodium fluoride (the relevant active ingredient in the Products) works to prevent cavities.

*First*, the FDA found that caries are caused, *inter alia*, when the "inorganic portion of the tooth" (*e.g.*, enamel) is demineralized. Sodium fluoride prevents enamel loss and therefore helps to prevent cavities and decay. NPR at 20671 ("The deposition of fluoride in dental enamel has been shown to increase resistance to enamel solubility and therefore dental decay."). **Second**, it further found that fluoride "enhance[s]" "remineralization," the process whereby minerals like "calcium and phosphate" are replenished "to the tooth surface" demonstrating "cariostatic effectiveness." NPR at 20672 ("When fluoride is present in saliva or in plaque, the remineralization process is enhanced.").

In addition, the FDA has not taken any issue with these label claims. As a precursor to enforcement action, the FDA may issue "Warning Letters" to manufacturers it believes have violated the FDCA. *See, e.g.*, FDA Manual, § 4–1–1 ("A Warning Letter is the agency's principal means of achieving prompt voluntary compliance with the Federal Food, Drug and Cosmetic Act."). Manufacturers (and courts) rely on FDA warning letters for guidance on FDA interpretation of its rules and regulations (*e.g.*, FDA monographs). *See, e.g.*, *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 374 (S.D.N.Y. 2014) (noting that the FDA "has expressed no concern about the label 'Restores Enamel'" through Warning Letters).

With regard to labeling claims falling under the Anticaries Monograph, the FDA has evaluated substantively similar claims of "Restores" and "Rebuilds" in the context of the effect of oral care products on tooth enamel and did not indicate that they were misleading or violated the Anticaries Monograph's requirements. In 2010, for example, the FDA issued two separate Warning

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Letters to different manufacturers of oral care products (not Haleon or its predecessor). These letters expressly evaluated whether "the product's labeling claim . . . is misleading and accordingly . . . misbranded within the meaning of section 502(a) of the Act." *See* Sept. 27, 2010 Warning Letter NWE-20-10W, attached hereto as Exhibit A; Sept. 27, 2010 Warning Letter CHI-10-10, attached hereto as Exhibit B. Both Warning Letters found that the products were governed by the Anticaries Monograph because they contained sodium fluoride as the active ingredient. *Id.* The Warning Letters took issue with the effect of fluoride on gums. Both letters, however, considered label claims substantively identical to those at issue here—for one product, that it "***Rebuilds enamel*** and strengthens teeth" and for the other that it "***Restores*** Minerals to Enamel," respectively. *See* Exhibits A and B (emphasis added). The letters, notably, did not provide any warning or find any fault with respect to either tooth enamel claim. These letters reflect that the FDA is aware of and considered substantively similar enamel claims to those at issue here, and neither expressed any challenge to the enamel claims nor suggested either product was misbranded as a result of such claims.

15

**B.** **Plaintiffs' Allegations**

16
17
18

Plaintiffs' Complaint describes and includes images from the labeling of two Products: Pronamel Intensive Enamel Repair Whitening (Compl. ¶¶ 29-30) and Pronamel Gentle Whitening (*id.* ¶¶ 22, 24).

19
20
21

Under the brand name on the Pronamel Intensive Enamel Repair label, the product is described as a "TOOTHPASTE FOR SENSITIVE TEETH AND CAVITY PREVENTION." Below that in a different, brighter font, it states "Repairs ***Weakened*** Enamel.*"

22
23
24
25
26
27



28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Id.* ¶ 29 (emphasis added).  The asterisk, in turn, directs consumers to the side panel which elaborates on how the product "Repairs" "***weakened*** areas of the enamel" by "driv[ing] minerals deep into the enamel surface" along with a simplified graphic showing this process of acid breakdown of enamel and strengthening through remineralization:



> Sensodyne Pronamel Intensive Enamel Repair is proven to drive minerals deep into the enamel surface to help actively repair acid-weakened areas of the enamel, for strong, better-protected teeth.

*Id.* ¶ 30; *see also id.* (explaining that the product "Lock[s] in minerals to protect against the effects of acid wear" and "Protect[s] against cavities").  Plaintiffs do not identify any statement on the Pronamel Intensive Enamel Repair label addressing ***lost*** enamel, much less a statement that the product will regrow enamel that has been completely worn away.

The Gentle Whitening label is different in several respects.  It states it is "TOOTHPASTE FOR SENSITIVE TEETH AND CAVITY PREVENTION." *Id.* ¶ 22.



DEFENDANTS' MOTION TO DISMISS;
3:24-CV-04059-TLT

Below that, in a larger font, the label identifies the product as "Specialist Enamel ***Protection***" and just below that, it includes the terms "Rebuilds, Restores, Refreshes." *Id.* (emphasis added). A side panel describes that the product can help "rebuild and restore acid ***weakened*** enamel" and help "prevent[] enamel loss" along with a graphic visually demonstrating how the process of remineralization helps strengthen weakened enamel:



> Acidic foods and drinks can cause enamel loss that can lead to yellowing, dullness and sensitivity. Pronamel has a specialty formulation ***to help rebuild and restore acid weakened enamel, helping prevent enamel loss for strong, healthy teeth.***

*Id.* ¶ 24 (emphasis added). Like the Intensive Enamel Repair product, the Gentle Whitening product does not make ***any*** claims about bringing back enamel that has been lost.

Plaintiff Grace Jones allegedly purchased a Product from a CVS Pharmacy, but she does not specifically identify which Product she bought. *Id.* ¶ 66. She allegedly purchased the toothpaste after seeing the "Rebuilds" and "Restores" label claims, which she allegedly understood to mean that the toothpaste "would rebuild and restore her thinning and lost enamel." *Id.* Plaintiff Anderson Silva allegedly purchased Pronamel Intensive Enamel Repair toothpaste from a CVS pharmacy because he interpreted the claim "repair" to mean the product would "repair his thinning and lost enamel." *Id.* ¶ 67.

Neither Plaintiff identifies any other Haleon statement they allegedly reviewed and considered before making the alleged purchases at issue. Nor do they dispute that the Products protect against enamel loss and "harden and strengthen" weakened enamel by enhancing remineralization. *See id.* ¶ 41 (admitting "sodium fluoride can help to prevent cavities and enamel loss through a process called remineralization"); *id.* ¶ 46 ("Minerals, such as calcium, naturally fill

the voids of the crystalline enamel structure. These minerals harden and strengthen enamel."); *id.* ¶ 47 (describing sodium fluoride's role in the process of remineralization).

Plaintiffs say that they no longer are purchasing the Products allegedly because they now understand that enamel cannot be regrown once it has been lost. *Id.* ¶ 69 ("[A]s long as Haleon may use the phrase [Repair, Restore, and Rebuild] enamel on Products that cannot actually bring back lost enamel, Plaintiffs will be unable to rely on Haleon's representations."); *id.* ¶ 41 (noting Plaintiffs' understanding that "enamel loss is permanent").

Plaintiffs filed this putative nationwide class action seeking damages, injunctive relief, and other equitable relief for violation of the California Consumers Legal Remedies Act ("CLRA") (Count I); California False Advertising Law ("FAL") (Count II); common law fraud (Count III); California's Unfair Competition Law ("UCL") (Count IV); and unjust enrichment (Count V).

## III.    **LEGAL STANDARD**

FRCP 12(b)(6) requires Plaintiffs to "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (brackets and citation omitted).

Plaintiff must also plead sufficient factual information to support a finding of Article III standing and subject matter jurisdiction to survive a FRCP 12(b)(1) challenge. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").

1

IV.    **ARGUMENT**

2

A.    **The Plain Language of the Labels Belies Plaintiffs' Interpretation.**

3

Plaintiffs' claims should be dismissed because they fail to allege a misleading, false, or

4

inaccurate statement.[3]  "[C]laims under the California consumer protection statutes are governed

5

by the 'reasonable consumer' test." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).  In the

6

context of false labeling claims, the "reasonable consumer" test requires that a plaintiff plead and

7

prove "more than a mere possibility that [the] label 'might conceivably be misunderstood by some

8

few consumers viewing it in an unreasonable manner.'"  *Id.*  "Rather, the reasonable consumer

9

standard requires a probability 'that a significant portion of the general consuming public or of

10

targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.*

11

"[A]llegations of deception must be assessed according to what the advertisement or label

12

depicts and ***actually says***, and ***not allegations of implied meaning***."  *Andrade-Heymsfield v.*

13

*NextFoods, Inc.*, No. 3:21-CV-01446-BTM-MSB, 2022 WL 1772262, at *4 (S.D. Cal. Apr. 27,

14

2022) (emphasis added) (citation omitted) (granting motion to dismiss claims concerning allegedly

15

implied health benefits).  "[W]here a court can conclude as a matter of law that members of the

16

public are not likely to be deceived by the product packaging, dismissal is appropriate."  *Werbel v.*

17

*Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010); *see also*

18

*Brown v. Starbucks Corp.*, No. 18CV2286 JM (WVG), 2019 WL 996399, at *3 (S.D. Cal. Mar. 1,

19

2019) (granting motion to dismiss and noting "in certain instances, a court can properly make this

20

determination and resolve [deception] claims based on its review of the product packaging")

21

(brackets and citation omitted).

22

Here, Plaintiffs allege that three out-of-context words imply that Haleon falsely and

23

misleadingly claims that the Products regrow lost enamel.  *See, e.g.*, Compl. ¶ 2 (alleging

24

"Rebuilds," "Restores," and "Repairs" means that the Products "are capable of rebuilding,

25

---

[3] Plaintiffs' failure to identify a false or misleading statement is fatal to their claims for fraud and

26

unjust enrichment as well.  *See Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1087
(N.D. Cal. 2022) ("The elements of fraud are a misrepresentation, knowledge of its falsity, intent

27

to defraud, justifiable reliance and resulting damage.") (internal citations omitted); *Richards v.*
*Centripetal Networks, Inc.*, No. 4:23-CV-00145-HSG, 2024 WL 24327, at *6 (N.D. Cal. Jan. 2,

28

2024) ("A claim for unjust enrichment requires a plaintiff to plead two elements: 'receipt of a
benefit and unjust retention of the benefit at the expense of another.'").

restoring, and repairing *lost* tooth enamel") (emphasis added).  But, the Products' labels make no such claims about *lost* enamel, and in context make only fully accurate claims about repairing *weakened* enamel and *protecting* enamel, which is fully consistent with the FDA monograph and Plaintiffs do not dispute the Products are capable of doing.

The Intensive Enamel Repair label explains that the toothpaste "Repairs *Weakened Enamel\**."  *Id.* ¶ 30 (emphasis added).  "Weakened enamel" necessarily means that the tooth enamel is still there albeit at reduced strength or effectiveness, *not* something that is *lost*.[4]  *Id.*  And, Plaintiffs do not dispute that the Products "harden and strengthen" existing enamel by enhancing remineralization.  *Id.* ¶ 46; *id.* ¶ 47 (admitting "[f]louride helps naturally occurring minerals, like calcium bind to the enamel structure, which hardens existing enamel and makes it less prone to erosion" through "remineralization").  "Hardening and strengthening" enamel that had become soft or weakened by bonding minerals to it logically is a form of repairing weakened tooth enamel.  *See* Merriam-Webster Dictionary,  https://www.merriam-webster.com/dictionary/repair (last visited August 23, 2024) (defining *Repair* as "replacing a part or putting together what is torn or broken" or bringing back "to a sound or healthy state").

Though the Intensive Enamel Repair front label does not claim that it brings back lost enamel, the challenged claim is paired with an asterisk directing consumers to a side panel corroborating the claim on the front by describing how it enhances remineralization to repair acid *weakened* enamel: "Sensodyne Pronamel Intensive Enamel Repair is proven to *drive minerals deep into the enamel surface to help actively repair acid weakened areas of the enamel*."  Compl. ¶ 30 (emphasis added); *see Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024) (affirming order granting motion to dismiss and explaining that "the presence of an asterisk [near challenged statement on front panel] alone puts a consumer on notice that there are qualifications or caveats, making it unreasonable to assume that the Products were 100% plant-based") (citing

---

[4] Plaintiffs' Complaint contains various references to "thin" or "thinning" enamel as well.  They cite no statement from Haleon that they saw or considered plausibly promising any effect on "thin" or "thinning" enamel.  Nor do Plaintiffs explain the difference (if any) between thin enamel and lost enamel.  In any event, any contentions regarding "thin" or "thinning" enamel fails for the same reason as their claims concerning lost enamel.

*Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015) ("Plaintiff cannot simply look to the statement on the front panel, ignore the asterisk, and claim he has been misled.")); *Houser v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 21-CV-09390 JST, 2023 WL 7284160, at *3 (N.D. Cal. Nov. 3, 2023) (rejecting plaintiff's interpretation and explaining in the alternative that disclaimer language on packaging clarified any alleged misunderstanding of the claim at issue).   The side panel's illustration also depicts the remineralization process first showing a close-up image of "weakened enamel," then depicting a close-up image of "lock[ing] in minerals," and third showing a zoomed-out image of a "strong healthy [tooth]."  Compl. ¶ 30; *see also id.* ¶¶ 45-46 (admitting "[m]inerals . . . naturally fill the voids of the crystalline enamel structure" and "Fluoride helps naturally occurring minerals . . . bind to the enamel structure").  The packaging is entirely consistent with Plaintiffs' own characterization of the effects and benefits of fluoride ***and*** the FDA's conclusions on the subject.

For the Gentle Whitening product, the label likewise contains no express or implied promise of regrowing enamel after it has been lost.  *See id.* ¶ 22.  Instead, language prominently above the challenged claims "Rebuilds" and "Restores" states that the product provides "Specialist ***Enamel Protection***."  *Id.* (emphasis added).  Enamel that is lost cannot be protected—to protect something means to "cover or shield from exposure, injury, damage, or destruction,"[5] which the Complaint admits the fluoride in the Products does.  *Id.* ¶ 47 (admitting "[f]louride helps naturally occurring minerals, like calcium bind to the enamel structure, which hardens existing enamel and makes it less prone to erosion" through "remineralization").[6]  As with "repair," rebuilding and restoring

---

[5] *Protect*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/protect (last visited Aug 23, 2024).

[6] Likewise, it is not necessary to consult the additional context of the side panel of the Gentle Whitening products.  The graphics and additional text found therein are entirely consistent with the fair and reasonable reading of the front panel.  The side panel further explains the toothpaste "has a specialty formulation to help rebuild and restore ***acid weakened enamel***"—*i.e.*, enamel that is actually there—"helping ***to prevent enamel loss*** for strong, healthy teeth."  Compl. ¶ 24 ("Rebuild enamel ***strength***") ("***protect against the effects*** of dietary acids") (emphasis added).  The side panel also depicts remineralization.  *Id.* (describing "weakening [of] the enamel structure").  Plaintiffs cannot point to a single representation that either Product can "regrow" or "replace" lost enamel.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DEFENDANTS' MOTION TO DISMISS;
3:24-CV-04059-TLT

(*e.g.*, "to make extensive repairs to" and to "put back into a former" state)[7] are alternative ways of explaining the process of "hardening and strengthening" enamel that had become soft or weakened.

When evaluated in the context of the overall labels and admissions in the Complaint, it is apparent that the labels are not false or misleading.  The Complaint admits that fluoride prevents enamel erosion and "hardens and strengthens" enamel through remineralization.  *Id.* ¶¶ 46-47. There is nothing misleading about Haleon describing those actions using words like "repair," "rebuilds," and "restores."  It is not false or misleading for a manufacturer to choose a different, albeit synonymous, nomenclature than Plaintiffs' apparent preference.  Indeed, Plaintiffs' ***own sources*** use the terms "***remineralization***" and "***repair***" synonymously:  "Use of some toothpastes that have been showed [sic] to possess different properties of ***remineralization and/or repair of the enamel*** surface may help to protect tooth enamel."  *See id.* ¶ 44 n.9 (citing source describing the "remineralization/repair effects of the enamel surface") (emphasis added).[8]  And the additional information on the labels provides further clarification of what the Products actually do to repair, rebuild, and restore.  Plaintiffs' claims challenging such claims on the label lack merit.

Courts routinely reject claims that a product label allegedly promises some particular performance or that a product has a particular attribute where "plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-83 (9th Cir. 2021) (finding claims of a misleading label implausible "based on three key contextual inferences from the product itself"; "[D]eceptive advertising claims should take into account all the information available to consumers and the context in which that

---

[7] *Rebuild*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/rebuild (last visited Aug. 23, 2024); *Restore*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/restore (last visited Aug. 23, 2024).

[8] Other publicly available sources likewise use the terms interchangeably. *See, e.g.*, P. Sachdev, *What to Know about Remineralizing Teeth*, WebMD (Nov. 1, 2021), https://www.webmd.com/oral-health/remineralizing-teeth ("Remineralization is a natural tooth ***repair*** process."); Dr. Akshima Sahi, BDS, *What is Tooth Remineralization*, News Medical Life Sciences, (Nov. 11, 2018), https://www.news-medical.net/health/What-is-Tooth-Remineralization.aspx ("Tooth remineralization is a reparative process, which occurs naturally and daily inside the mouth.  This process ***repairs*** the lost enamel . . . and helps in preventing cavities."); Dr. JDB Featherstone, *Dental Caries: a dynamic disease process*, Australian Dental Journal, Aug. 18, 2008), https://onlinelibrary.wiley.com/doi/10.1111/j.1834-7819.2008.00064.x ("Remineralization is the natural ***repair*** process for non-cavitated lesions . . . .") (using "Remineralization/tooth ***repair***" interchangeably) (all emphases added).

information is provided and used."); *Steiner v. Vi-Jon Inc.*, No. 23-CV-00473-AMO, 2024 WL 1181002, at \*5 (N.D. Cal. Mar. 18, 2024) (finding that "Plaintiffs' theory of the misleading representations . . . fails to establish how the label is false or misleading when read as a whole"); *Houser*, 2023 WL 7284160, at \*3 (rejecting claim that product promised to heal cold sore in 2.5 days and noting "[a] reasonable consumer is not likely to be misled by a representation when a plaintiff's interpretation of that representation is inconsistent with its plain language"); *Rugg v. Johnson & Johnson*, No. 17-cv-05010-BLF, 2018 WL 3023493, at \*1 (N.D. Cal. June 18, 2018) ("Given these definitions, the Court finds it completely implausible that a reasonable consumer would understand the use of the term 'hypoallergenic' on a product's label to mean that the product does not contain ***any*** ingredients, in any concentration, which could 'sensitize' the skin, cause cancer, or have ***any*** other negative effect, regardless of whether such effect constitutes an allergic reaction") (italics in original); *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at \*5, \*8 (N.D. Cal. Mar. 15, 2016) (relying on definition of the term "guaranteed" to conclude that "GUARANTEED for 10 Years in storage" is "'not likely to deceive' a reasonable consumer into believing that Duralock Batteries have no potential to leak for ten years in storage") (emphasis in original) (citations omitted).  Plaintiffs' claims similarly should be dismissed.

### B.    Plaintiffs' Claims Are Preempted By Federal Law.

#### 1.    The FDCA preempts state law claims imposing requirements different from or in addition to the final Anticaries Monograph.

Under the Supremacy Clause of the U.S. Constitution, "Congress has the power to pre-empt state law expressly." *Hillman v. Maretta*, 569 U.S. 483, 490 (2013).  Where Congress has expressly manifested its intent to preempt state law, no presumption against preemption applies.  *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125 (2016).  Rather, courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (citation omitted).

Relevant here, the Food and Drug Administration Modernization Act of 1997, Pub. L. No. 105-115, 111 Stat. 2296, added an express preemption clause to the FDCA titled "National Uniformity for Nonprescription Drugs."  21 U.S.C. § 379r.  This express preemption provision

specifically provides that "no State or political subdivision of a State may establish or continue in effect any requirement" that relates to an over-the-counter drug that is "different from or in addition to, or that is otherwise not identical with" federal law. *Id.*; *see also Morgan*, 2023 WL 3607275, at *3 (explaining that Section 379r "is an express preemption clause") (citations omitted).

A state requirement is "not identical" to federal law if it "directly or indirectly" imposes labeling requirements that (a) are "not imposed by or contained in the applicable [federal] provision (including any implementing regulation)" or (b) "[d]iffer from those specifically imposed or contained in the applicable provision." 21 C.F.R. 100.1(c)(4) (interpreting similar preemption provision for food labels). With respect to the labeling of OTC drugs, "the whole point of section 379r is that it is not up to private litigants—or judges—to decide what is 'false or misleading.' It is up to the FDA." *Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433, 454 (2015). "State suits seeking to require product labels inconsistent with the federal objective of national labeling uniformity, and not congruent with the FDA's balanced effort to achieve such uniformity, are preempted." *Id.* at 455.

The touchstone of preemption under section 379r is the ***effect*** that a finding of liability on a particular claim would have on a manufacturer, and not the particular common law or state law theory upon which that claim was brought. *Morgan*, 2023 WL 3607275, at *6 (quoting *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1283 (C.D. Cal. 2008)). "As long as that claim imposes a 'requirement' that is at variance with FDA regulations, it is preempted." *Carter*, 582 F. Supp. 2d at 1283. "Under this standard, preemption is certainly appropriate when a state law ***prohibits*** labeling that is permitted under federal law. But it is also appropriate when a state law prohibits labeling that is ***not prohibited*** under federal law." *Wiltz v. Chattem, Inc.*, No. CV 15-1352-R, 2015 WL 3862368, at *1 (C.D. Cal. May 8, 2015) (finding challenges to claim that oral care product "Rebuilds Tooth Enamel" were preempted) (emphasis added).

Courts in this Circuit have found that state law challenges to labeling statements either expressly permitted or not expressly prohibited under FDA monographs are expressly preempted. *See, e.g.*, *Morgan*, 2023 WL 3607275, at *6 (finding that claims challenging the phrase "rapid release" were preempted because the claim "[did] not 'go beyond the FDA-approved' designation

set forth by the USP and incorporated by the [monograph] but [was] rather encompassed by that designation"); *Seale v. GSK Consumer Health, Inc.*, -- F. Supp. 3d --, 2024 WL 1040854, at *6-7 (C.D. Cal. Feb. 27, 2024) (finding that because FDA's monograph for cough and cold medications "[did] not impose any requirement or prohibition like those that Plaintiffs [sought]," plaintiffs "impermissibly [sought] to impose a requirement 'that [was] different from or in addition to, or that [was] otherwise not identical with' the FDA's monograph"); *Faustino v. Alcon Labs., Inc.*, No. CV1504145RGKAJWX, 2015 WL 12839161, at *2 (C.D. Cal. Sept. 22, 2015) (finding claim that defendant misrepresented the safety of eye drops by failing to warn of possible risks preempted because plaintiff's claim "[fell] squarely within the subject matter regulated by the FDA, i.e. labeling standards and required warnings"); *see also Eckler*, 238 Cal. App. 4th at 458 (finding that claims seeking to add disclaimer to defendant's sunscreen label "plainly adds to and is not identical with the FDA's requirements").

### 2.    Plaintiffs' claims would impose requirements that are different from or in addition to, and not otherwise identical with, the Anticaries Monograph.

Plaintiffs ask this Court to determine that the claims "Rebuild," "Restore," and "Repair" are false and misleading because Plaintiffs contend those claims suggest the Products ***regrow*** enamel that is ***lost***. *See, e.g.*, Compl. ¶ 4. As noted above, the labels make no such claim but rather accurately describe some of the effects of remineralization, which the FDA monograph specifically accepts as a benefit of these products. Plaintiffs seek to impose a requirement prohibiting Haleon's use of these claims, even though they are made in the context of the labels' discussion of remineralization and protection against enamel erosion. Plaintiffs' state law prohibitory requirements are preempted because they are "different from," "in addition to," and "not otherwise identical" to the FDA's governing Anticaries Monograph. *See* Section IV.B.1.

The Anticaries Monograph specifically authorizes labeling that the product "Aids in the prevention of dental (select one of the following: 'cavities,' 'decay,' 'caries (decay),' or 'caries (cavities)')." 21 C.F.R. § 355.50. The Anticaries Monograph also specifically provides that "[o]ther truthful and nonmisleading statements, describing" the stated Indication are also permitted, meaning that it is not an exhaustive list of the language that may be used to describe the

Indication.  *Id.*  The FDA has found that sodium fluoride, the active ingredient in the Products, helps to prevent cavities by decreasing enamel solubility and thus protecting against the demineralization of enamel that causes caries.  NPR at 20672.  The FDA further found that sodium fluoride **enhances** the process by which minerals such as calcium and phosphate are returned to the tooth surface (*i.e.*, remineralization), protecting against caries.  *Id.*  There is nothing in the Anticaries Monograph prohibiting manufacturers from including the terms "Rebuilds," "Restores," or "Repairs" to describe how sodium fluoride aids in the prevention of caries through its prevention of enamel loss and hardening and strengthening of **existing** enamel by **enhancing** remineralization.  *See id.*

As recently recognized by Judge Tigar, preemption applies where—as here—the FDA has addressed the substance of the challenged statement and does not prohibit language consistent with its findings.  *See Morgan*, 2023 WL 3607275.  In *Morgan*, the plaintiffs purchased "rapid release" acetaminophen gelcaps, which were allegedly more expensive than regular acetaminophen caplets that did not have the "rapid release" claim on their label.  *Id.* at *6.  The plaintiffs alleged that the claim of "rapid release" was misleading because the caplets did not work any faster than the regular caplets.  *Id.*  To determine whether the plaintiffs' claims were preempted, Judge Tigar looked to the applicable monograph and found that the monograph permitted claims of "immediate release."  *Id.*  Judge Tigar reasoned that as a matter of logic, "rapid release" is similar to "immediate release."  *Id.*  While the monograph did not expressly approve of the statement "rapid release," it was necessarily subsumed by and consistent with the FDA's approval of "immediate release" as outlined in the monograph.  Accordingly, the plaintiffs' claims were preempted.  *Id.*

The same follows here.  As in *Morgan*, the Products are governed by the requirements of a monograph.  The Anticaries Monograph permits claims that the product "aids in the prevention of dental [cavities]" and other truthful and nonmisleading statements describing the indication for use.  21 C.F.R. § 355.50.  "Rebuild[ing]," "Repai[ing]," and "Restor[ing]" enamel's strength by enhancing remineralization and reducing a tooth's resistance to enamel erosion is squarely encompassed within the Anticaries Monograph's approval of statements that convey the product "aids in the prevention of dental ["cavities," "decay," or "caries"]."  Plaintiffs admit that fluoride

"hardens and strengthens" enamel that has become weak or soft and likewise "mak[ing] it less prone to erosion." Compl. ¶¶ 46-47. These actions, as the FDA found, aid in preventing caries. 21 C.F.R. § 355.50. Thus, like the claim "rapid release," the claims here are encompassed with the FDA-approved designation set forth in the applicable monograph. *See Morgan*, 2023 WL 3607275, at *6 ("[W]hile the FDA may not have considered the exact language addressed . . . , it had clearly addressed the substance of the claims at issue.") (citation omitted). A claim challenging the use of different terminology where the substance of the claims—preventing decay and cavities by hardening and strengthening enamel and preventing enamel erosion—is addressed by the FDA compels preemption. Plaintiffs' claims are thus preempted because a finding of liability "would have the effect of establishing a state requirement that is different from and otherwise not identical with the requirements set for by the" Anticaries Monograph. *Id.* (cleaned up).

Courts in this Circuit have found claims governed by monographs preempted. *See, e.g.*, *Carter*, 582 F. Supp. 2d at 1284 (finding that because the FDA had determined through the OTC cough and cold medicine monograph that the product at issue was safe and effective, plaintiff's claims that labeling was false and misleading "in light of the fact that OTC cough and cold medicines do not work and are dangerous to young children" were preempted); *Seale*, 2024 WL 1040854, at *7 (finding that plaintiff's claims seeking to add a disclosure to defendant's antitussive products marketed for children indicating they were identical to defendant's equivalent adult products were preempted because "the FDA's monograph for cough and cold medications . . . already regulates the labeling of antitussive drug products, including those intended for children"); *Youngblood v. CVS Pharmacy*, No. 2:20-CV-06251-MCS-MRW, 2021 WL 3700256, at *3-4 (C.D. Cal. Aug. 17, 2021) ("Adjudicating Plaintiffs' claims in their favor would penalize Defendants for declining to include labeling representations beyond what the 1988 [tentative final monograph] require[d].").

At least two courts have considered substantively similar claims concerning tooth enamel and each found the claims were preempted. For example, in *Bowling*, the plaintiffs brought putative class claims under various state statutes against the manufacturer of a line of mouthwashes. 65 F. Supp. 3d at 373. Plaintiffs alleged that the claim "Restores Enamel" on a mouthwash label was

17

false and misleading because enamel loss is permanent and cannot be restored. *Id.* The court considered the same Anticaries Monograph, which the court noted was silent as to the phrase "Restores Enamel" and neither ***prohibited*** the challenged statement nor ***required*** any disclosure, explanation, or warning concerning enamel restoration. *Id.* The court held that plaintiffs' claims were preempted because they sought to impose requirements "not identical with" the FDA's requirements. *Id.* at 376. It was enough for preemption to apply that the monograph addressed tooth decay and enamel generally even though the monograph did not expressly permit the "Restores Enamel" label at issue. *Id.* (emphasis added). The court was clear that "[f]or plaintiffs to establish that their state law claims are not preempted, it is insufficient to show that the FDA has not permitted the label 'Restores Enamel.' Rather, plaintiffs would need to plead facts suggesting that the FDA has affirmatively ***prohibited*** the label. Otherwise, plaintiffs' state law causes of action would be, in effect, imposing a labeling requirement that is 'not identical with' labeling requirements under federal law." *Id.* The same result follows here.

In *Wiltz*, the plaintiff alleged that defendants' oral care product was misbranded because its label included the claim "Rebuilds Tooth Enamel." 2015 WL 3862368, at *1. Like the court in *Bowling*, the court noted the 1995 Anticaries Monograph's silence as to whether "Rebuild Tooth Enamel" was misleading and found that the plaintiff's claim was preempted because "Rebuilds Tooth Enamel" was not expressly prohibited under federal law. *Id.* The court accordingly dismissed the plaintiff's complaint with prejudice. *Id.*

Plaintiffs cannot avoid preemption by arguing that their claims are identical to federal requirements because the FDCA broadly prohibits "false or misleading" statements. Compl. ¶ 3. Courts in this circuit have already explained that the FDCA's general prohibition on "false or misleading" statements cannot be used to evade preemption and that the relevant issue is whether the effect of a plaintiff's claims is to impose a labeling requirement that is different from, in addition to, or not identical with an applicable monograph. *See, e.g.*, *Faustino*, 2015 WL 12839161, at *2 (finding that by relying only on the general false and misleading provision, plaintiffs' claim "necessarily alleges deficient warnings that violate requirement differing from or adding to the FDA regulations"); *Carter*, 582 F. Supp. 2d at 1284 (rejecting claims based "upon allegedly

misleading statements relating to the safety and effectiveness of Defendants' products" where the FDA issued a monograph determining that the product was safe and effective); *Seale*, 2024 WL 1040854, at *7 ("It is essentially inconsequential that the theory of Plaintiff's claims is reflective of § 352(a)(1) where Plaintiff seeks to impose a specific labeling requirement or prohibition regarding children's products that are pharmacologically equivalent to adult products that is not imposed by the FDA's monograph."); *see also Bowling*, 65 F. Supp. 3d at 376-77 (rejecting argument that the FDCA's general "misbranding" provision can be used to avoid preemption).

Plaintiffs' claims are preempted and should be dismissed with prejudice.

**C.      Plaintiffs Are Not Entitled to Equitable Relief.**

Because Plaintiffs have failed to plead that they do not have an adequate remedy at law, Plaintiffs' claims for equitable relief must be dismissed.  Under Ninth Circuit law, Plaintiffs cannot pursue equitable claims unless they establish that they lack an adequate remedy at law.  *See Sonner*, 971 F.3d at 845 (affirming dismissal of equitable claim where the plaintiff "fail[ed] to demonstrate that she lacks an adequate legal remedy"); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (finding that "an adequate remedy at law through [a] CLRA claim for damages . . . require[s the Court] to dismiss [an] equitable UCL claim").  As the court in *Smith v. Apple, Inc.*, explained, "*Guzman's* discussion of 'equitable jurisdiction' [precludes] pleading equitable remedies in the alternative."  *Smith v. Apple, Inc.*, No. 21-CV-09527-HSG, 2023 WL 2095914, at *3 (N.D. Cal. Feb. 17, 2023) (dismissing plaintiffs' claims to the extent they sought equitable relief).

The Complaint alleges Plaintiffs are entitled to a number of legal remedies, including compensatory damages, punitive damages, costs, and attorneys' fees.  *See* Compl. ¶¶ 84-85; *id.*, Prayer for Relief (seeking "an award of compensatory damages," "statutory damages," "punitive damages," and "treble damages").  Plaintiffs fail to allege why a legal remedy would be inadequate. Instead, Plaintiffs allege "only hypothetically and as an alternative to any contrary allegations" that they would lack an adequate remedy at law if Plaintiffs and the subclass are unable to prove requisite elements to obtain relief under certain causes of action.  *Id.* ¶ 94 (individualized understanding of representations or requisite *mens rea*); *id.* ¶ 116 (same).  But *Guzman* precludes

1    pleading equitable remedies as an alternative as a basis for establishing inadequate remedies at law.

2    *See Smith*, 2023 WL 2095914, at *3; *see also Phillips v. Brooklyn Bedding LLC*, No. 23-CV-03781-

3    RFL, 2024 WL 2830663, at *1 (N.D. Cal. Mar. 28, 2024) (dismissing plaintiff's equitable claims

4    and finding that "[plaintiff's factual allegations must provide a plausible basis to conclude that 'the

5    same amount of money for the exact same harm is inadequate or incomplete'"); *In re Qualcomm*

6    *Antitrust Litig.*, No. 17-MD-02773-JSC, 2023 WL 7393012, at *8 (N.D. Cal. Nov. 7, 2023) (under

7    *Sonner* and *Guzman*, "the failure to pursue, or to successfully pursue, an adequate remedy at law

8    does not make that remedy inadequate").

9         **D.    Plaintiffs Lack Standing to Seek Injunctive Relief.**

10        Plaintiffs' own allegations in which they acknowledge that they now understand the

11    impossibility of regrowing lost enamel preclude any claim for injunctive relief.  "[A] plaintiff must

12    demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc. v.*

13    *Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d

14    956, 967 (9th Cir. 2018).  "Past exposure to harmful or illegal conduct does not necessarily confer

15    standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects."

16    *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).  To establish standing to seek

17    injunctive relief, Plaintiffs must demonstrate that they are "realistically threatened by a ***repetition***

18    of the violation."  *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (italics in original)

19    (citation omitted).  The Ninth Circuit has held that where standing for injunctive relief "is premised

20    entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will

21    again be wronged in a similar way.'"  *Davidson*, 889 F.3d at 967 (citation omitted); *see also Matic*

22    *v. U.S. Nutrition, Inc.*, No. CV 18-9592 PSG (AFMx), 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27,

23    2019) ("Plaintiff is now aware that he can find out how much protein powder is in Defendant's

24    containers" and is not "likely to be deceived by the size of the protein powder containers in the

25    future.").

26        Here, taking Plaintiffs' allegations as true, they are fully aware that the Products cannot

27    regrow enamel that is completely lost, Compl. ¶ 69, and cannot reasonably plead that they will be

28    injured in the future by the claims at issue because of that awareness and understanding.  *See, e.g.*,

*Becker v. Skype Inc.*, No. 5:12-CV-06477-EJD, 2014 WL 556697, at *3 (N.D. Cal. Feb. 10, 2014) (dismissing claims without leave to amend, reasoning that, "[i]f a plaintiff has knowledge of a defendant's practices, that plaintiff cannot have standing to seek injunctive relief to redress injuries caused by those practices, because the plaintiff's knowledge precludes him from showing a likelihood of being injured in the future by those practices"); *Rahman v. Mott's LLP*, No. 13-CV-03482-SI, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) (holding plaintiff lacked standing to seek injunctive relief because he could rely on packaging now that he understood what "No Sugar Added" on label meant, and therefore did not face threat of future injury); *Joslin v. Clif Bar & Co.*, No. 4:18-CV-04941-JSW, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019) (holding that plaintiffs lacked standing for injunctive relief because they were unlikely to be deceived in the future by ingredient list); *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCX), 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (dismissing claim for injunctive relief where plaintiff did not adequately explain how he could be deceived by packaging in the future); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1127 (S.D. Cal. 2021) (no standing where "Plaintiffs can check the nutrition facts or ingredient labeling to assess if the products still contain preservatives").

Plaintiffs plainly lack standing to seek injunctive relief under the circumstances. To the extent Plaintiffs seek leave to amend, such leave should be denied because amendment would be futile. *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).

## V.    <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should grant Haleon's Motion and dismiss the Complaint.

1   Dated: September 4, 2024                    MORGAN, LEWIS & BOCKIUS LLP

2

3                                           By   */s/ Megan A. Suehiro*
                                               Megan A. Suehiro
4                                              J. Gordon Cooney Jr. (*pro hac vice forthcoming*)
                                               Franco A. Corrado (*pro hac vice forthcoming*)
5
                                               Attorneys for Defendants
6                                              Haleon US Holdings LLC and Haleon US Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW

DEFENDANTS' MOTION TO DISMISS;
                                               3:24-CV-04059-TLT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Megan A. Suehiro*

# EXHIBIT A

Home Inspections, Compliance, Enforcement, and Criminal Investigations Compliance Actions and Activities Warning Letters

**Inspections, Compliance, Enforcement, and Criminal Investigations**

**CVS Pharmacy, Inc. 9/27/10**



**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
New England District
One Montvale Avenue
Stoneham, Massachusetts 02180
(781) 596-7700
FAX: (781) 596-7896

**WARNING LETTER
NWE-20-10W**

**Hand Delivered**

September 27, 2010

Tom Ryan
CEO
CVS Corporation
One CVS Drive
Woonsocket, RI 02895

Dear Mr. Ryan:

This letter concerns CVS Complete Care Anticavity Mouthwash distributed by your firm. The label for this product makes the following claims: "Helps prevent cavities, Kills germs that cause bad breath, Rebuilds enamel and strengthens teeth, and Promotes healthy gums."

Based on the labeled claims, CVS Complete Care Anticavity Mouthwash is a "drug," as defined by as defined by section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (Act) (21 U.S.C. § 321(g)(1)), because it is intended for use in the prevention or mitigation of disease, or is intended to affect the structure or function of the human body, namely by preventing cavities and promoting healthy gums, which represents and suggests i will prevent gum disease, including gingivitis and plaque, and by strengthening teeth. The active ingredient listed in the Drug Facts panel is **(b)(4)**. This product is subject to the Final Monograph for Anticaries Drug Products for Over-the-Counter Use ["Anticaries"], 21 CFR Part 355, which covers the product's disease claim o helping "prevent cavities."

While **(b)(4)** is an active ingredient listed in the Anticaries Final Monograph for anticavity purposes, that monograph does not include any claims that **(b)(4)** (or any other ingredient) promotes healthy gums, one of the claims on the label of CVS Complete Care Anticavity Mouthwash. This statement is considered a disease claim because it represents and suggests that the CVS product will promote healthy gums and therefore prevent gum diseases, such as gingivitis. This claim or any gum disease claim is not covered by the Anticaries Final Monograph. Such antigingivitis/antiplaque claims are, however, addressed in the Advanced Notice of Proposed Rulemaking (ANPR) for Oral Healthcare Products for Antigingivitis/Antiplaque (68 Fed. Reg 32232 (May 29, 2003)). In that ANPR, the Food and Drug Administration (FDA) identified active ingredients under consideration for inclusion in an Antigingivitis/Antiplaque monograph; however, **(b)(4)** is not among them.

Thus, no mouthwash with **(b)(4)** as the active ingredient has been included or proposed for inclusion in any monograph for promoting healthy gums, which represents and suggests it will prevent gum diseases, such as gingivitis claimed in CVS Complete Care Anticavity Mouthwash; that ingredient is not included among those under evaluation in the ANPR for antigingivitis/antiplaque drug products, nor does the  anticaries monograph a 21 CFR part 355, which does include the active ingredient of **(b)(4)** , include antigingivitis/antiplaque as recognized claims. As formulated and labeled, CVS Complete Care Anticavity Mouthwash is not generally

recognized as safe and effective for the antigingivitis/antiplaque indications in its labeling, and it is, therefore, a new drug under section 201(p) of the Act (21 U.S.C. § 321(p)). Under section 505(a) of the Act (21 U.S.C. § 355(a)), a new drug may not be introduced or delivered for introduction into interstate commerce unless it is the subject of an FDA approved application. The marketing of CVS Complete Care Anticavity Mouthwash without an FDA-approved application violates this provision of the Act.

Furthermore, we note that on your website, www.cvs.com[1], you state that CVS Complete Care Anticavity Mouthwash has two active ingredients, namely **(b)(4)**. The active ingredient **(b)(4)** is not included in the Anticaries Final Monograph for anticavity uses or for any other uses. The **(b)(4)** ingredient and related gum disease (antigingivitis) claims are, however, addressed in the Advanced Notice of Proposed Rulemaking (ANPR) for Oral Healthcare Products for Antigingivitis/Antiplaque (68 Fed. Reg. 32232 (May 29, 2003)). In that ANPR, the agency, considered Antigingivitis claims, and stated in relevant part:

> The Subcommittee recommended the following as rational oral health care combination products: (1) An antigingivitis/antiplaque active ingredient combined with an anticaries active ingredient, (2) an antigingivitis/antiplaque active ingredient combined with a tooth desensitizer active ingredient, and (3) an antigingivitis/antiplaque active ingredient combined with an anticaries active ingredient and a tooth desensitizer active ingredient.

> However, the agency is not aware of any marketing history of such combination products eligible for the OTC drug review, nor were such combinations submitted to the Subcommittee. Therefore, the agency is dissenting from these recommendations at this time. Data are needed to establish the safety and effectiveness of these combination products. Accordingly, none of the combination products described above may be marketed OTC at this time under this advance notice of proposed rulemaking. The agency invites supporting data and information demonstrating that these combination products can be generally recognized as safe and effective for OTC use.

68 Fed. Reg. 32232

According to the ANPR, products that combine an antiplaque/antigingivitis ingredient with an anticaries ingredient may not currently be marketed without an approved application. According to your website, this product does contain this combination of ingredients and it does assert the claims addressed by the ANPR. We further note that **(b)(4)** is not an active ingredient under consideration in the ANPR for antiplaque/antigingivitis indications.

As described above, as described by labeling on your website, CVS Complete Care Anticavity Mouthwash is not generally recognized as safe and effective as an OTC anticaries drug product or for preventing or mitigating gum diseases including gingivitis and plaque, and it is, therefore, a new drug under section 201(p) of the Act (21 U.S.C. § 321(p)).

If **(b)(4)** is in fact an active ingredient, as stated on your website, then **(b)(4)** should appear on your product label as an active ingredient. The failure to so list **(b)(4)** on the product label violates section 502(e)(1)(A)(ii) of the Act (21 U.S.C. § 352(e)(1)(A)(ii). In addition, the listing of **(b)(4)** as an active ingredient in labeling on your website contradicts the label of your product, which indicates that **(b)(4)** is an inactive ingredient. Thus, the product's labeling is false or misleading and accordingly causes it to be misbranded within the meaning of section 502(a) of the Act. (21 U.S.C. § 352(a)).

The violations cited in this letter are not an all-inclusive list of deficiencies. You are responsible for investigating and determining the causes of these violations and for preventing their recurrence and the occurrence of other violations. You are to assure that your firm complies with all requirements of federal law and FDA regulations. You should take prompt action to correct the violations cited in this letter. Failure to promptly correct these violations may result in legal action without further notice, including, without limitation, seizure and injunction. Other federal agencies may take this Warning Letter into account when considering the award of contracts.

Within fifteen working days of receipt of this letter, please notify this office in writing of the specific steps that you have taken to correct the referenced violations. Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction. Your reply should be addressed to Anthony P. Costello, Compliance Officer, at the above address.)

Sincerely,

/s/

William S. Boivin
Acting District Director
New England District

**CVS Pharmacy, Inc. - Close out letter**

- CVS Pharmacy, Inc. - Close out letter[2]

Page Last Updated: 12/23/2010
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

 

For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety
Emergency Preparedness International Programs News & Events Training and Continuing Education
Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of **Health & Human Services**

**Links on this page:**

1. http://www.cvs.com/

2. /ICECI/EnforcementActions/WarningLetters/ucm237635.htm

# EXHIBIT B

Home Inspections, Compliance, Enforcement, and Criminal Investigations Compliance Actions and Activities Warning Letters

**Inspections, Compliance, Enforcement, and Criminal Investigations**

**Walgreen Company 9/27/10**



**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
Chicago District
550 West Jackson Blvd., 15th Floor
Chicago, Illinois 60661
Telephone: 312-353-5863

September 27, 2010

**WARNING LETTER
CHI-10-10**

**DELIVERED BY HAND**

Mr. Gregory D. Wasson
President and CEO
Walgreen Company
200 Wilmot Road
Deerfield, IL 60015-4620

Dear Mr. Wasson:

This letter is in reference to the Walgreen Mouth Rinse Full Action distributed by your firm. The label for this product makes the following claims: "Freshens breath, Helps prevent cavities, Restores enamel, Helps strengthen teeth, Helps kill germs that cause bad breath, Helps fight visible plaque above the gum line."

Based on the labeled claims including "Helps prevent cavities" and "Helps fight visible plaque above the gum line," Walgreen Mouth Rinse Full Action is a drug as defined in Section 201(g) of the Federal Food, Drug, and Cosmetic Act (Act) [21 U.S.C. § 321(g)] because the product is intended for use in preventing or mitigating disease, or to affect the structure or function of the body, by preventing cavities and removing plaque. Sodium fluoride 0.0221% (0,01% w/v fluoride ion) for the purpose of "Anticavity" is the sole ingredient identified on the label as an active ingredient for this product. This product is subject to the Final Monograph for Anticaries Drug Products for Over-the-Counter Use, 21 CFR Part 355, which covers the product's disease claim of helping "prevent cavities," and includes this active ingredient.

However, another claim on the label of Walgreen Mouth Rinse Full Action is "Helps fight visible Plaque Above the Gum Line." This statement represents that the product fights plaque, a well-known precursor to gum disease, including gingivitis. Antiplaque/antigingivitis claims are not covered by the Anticaries Final Monograph Such antiplaque/antigingivitis claims are, however, addressed in the Advanced Notice of Proposed Rulemaking (ANPR) for Oral Healthcare Products for Antigingivitis/Antiplaque (68 Fed. Reg 32232 (May 29, 2003)). In that ANPR, the agency identified active ingredients under consideration for inclusion in an antigingivitis/antiplaque monograph; however, sodium fluoride is not among them.

Thus, no mouthwash with sodium fluoride as the active ingredient has been included or proposed for inclusion in any monograph for the antiplaque/antigingivitis indications claimed for Walgreen Mouth Rinse Full Action. That ingredient is not included among those under evaluation in the ANPR for antiplaque/antigingivitis drug

products, nor does the anticaries monograph at 21 CFR part 355, which does include the active ingredient of sodium fluoride, include antiplaque claims as recognized claims. As formulated and labeled, Walgreen Mouth Rinse Full Action is not generally recognized as safe and effective for the antiplaque indications in its labeling, and it is, therefore, a new drug under Section 201(p) of the Act [21 U.S.C. § 321 (P)]. Under Section 505(a) o the Act [21 U.S.C. § 355(a)], a new drug may not be introduced or delivered for introduction into interstate commerce unless it is the subject of an FDA-approved application. The marketing of Walgreen Mouth Rinse Ful Action without an FDA-approved application violates this provision of the Act.

In addition, the label of your product includes several statements suggesting that the product provides oral health benefits beyond anticavity effects, including the antiplaque/antigingivitis benefits. These include the product name: "Walgreen Mouth Rinse Full Action," the statement "Compare to Listerine Total Care Anticavity Mouthwash active ingredient" and the statement "Helps fight visible plaque above the gum line." The claims described in the above paragraphs combined with the descriptive term "Full Action" and the suggestion to compare the product to another product with the name "Total Care" suggests that the product is comprehensive in function, and will provide benefits, including the antiplaque benefits declared in the labeling, We are not aware of any support for the antiplaque/antigingivitis claims or other statements suggesting that the product is comprehensive in function, providing benefits beyond those related to prevention of cavities. Thus, the product's labeling claims that it will provide all of the benefits listed are misleading and accordingly make it misbranded within the meaning of Section 502(a) of the Act, [21 U.S.C. § 352(a)].

We note additionally that your principal display panel (PDP) describes your product as "Sodium Fluoride and Acidulated Phosphate Topical Solution." The Drug Facts panel lists the sole active ingredient as "Sodium fluoride 0.0221% (0.01% fluoride ion)." These representations are inconsistent. Based on the information in your Drug Facts panel, it appears that the PDP should refer to either "Sodium Fluoride Acidulated Phosphate Solution" or just "Sodium Fluoride Solution." The Sodium fluoride listed in the drug facts panel should be listed at 0.02%; not 0.0221%.

The violations cited in this letter are not an all-inclusive list of deficiencies. You are responsible for investigatin and determining the causes of these violations and for preventing their recurrence and the occurrence of other violations. You are to assure that your firm complies with all requirements of federal law and FDA regulations.

You should take prompt action to correct the violations cited in this letter. Failure to promptly correct these violations may result in legal action without further notice, including, seizure and injunction. Other federal agencies may take this Warning Letter into account when considering the award of contracts.

You should notify this office in writing of the steps you have taken to bring your firm into compliance with the law within fifteen (15) working days of receiving this letter. Your response should include each step that has been taken or will be taken to correct the violations and prevent their recurrence. If corrective action cannot b completed within fifteen (IS) working days, state the reason for the delay and the time frame within which the corrections will be completed. Please include copies of any available documentation demonstrating that corrections have been made.

Your written response should be directed to Lorelei Jarrell, Compliance Officer, at the address of the letterhead If you have any questions regarding this letter, please contact Ms. Jarrell at 312-596-4216.

Sincerely,

/S/

Scott J. MacIntire
District Director

**Close Out Letter**

- Walgreen Co. - Close Out Letter 3/21/11[1]

Page Last Updated: 03/22/2011
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA



For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety
Emergency Preparedness International Programs News & Events Training and Continuing Education
Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of **Health & Human Services**

## Links on this page:

1. /ICECI/EnforcementActions/WarningLetters/ucm247921.htm